STAFFWORKS GROUP-WISCONSIN INC.,
d/b/a NICOLET STAFFING,
a Michigan Corporation,
24445 Northwestern Highway, Suite 200
Southfield, MI 48075

        Plaintiff,

v.                                         CASE NO.: 1:18-CV-392

SERVICE FIRST STAFFING, INC.,
a Wisconsin Corporation,
2835 N. Mayfair Road, Suite 3
Milwaukee, WI 53222,

DAVID SANDERS,
a Wisconsin Resident,
628 South Cambridge Street,
Wautoma, WI 54982

and

KATHRYN KIENERT,
a Wisconsin Resident,
E3967 Bow & Arrow Drive
Waupaca, WI 54981

        Defendants.

## COMPLAINT

Plaintiff Staffworks Group-Wisconsin, Inc., as and for its complaint against Service First Staffing, Inc., David Sanders and Kathryn Kienert, alleges as follows:

### PARTIES

1.      Staffworks Group-Wisconsin Inc., d/b/a Nicolet Staffing ("Nicolet"), is a Michigan corporation, with its principal place of business at 24445 Northwestern Highway, Suite 200,

Southfield, MI 48075. Nicolet provides temporary employee staffing and supportive home care staffing services to its clients, who are companies and individuals in Wisconsin and Michigan.

2. Service First Staffing, Inc. ("SFS"), is a Wisconsin corporation, with its principal place of business at 2835 N. Mayfair Road, Suite 3, Milwaukee, WI 53222. SFS also provides temporary employee staffing services to its clients, who are companies in Wisconsin. Nicolet and SFS are competitors, although SFS is a much larger company than Nicolet, with, on information and belief, hundreds of millions of dollars in annual sales.

3. David Sanders ("Sanders") is an adult resident of Wisconsin, who resides at 628 South Cambridge Street, Waupaca, WI 54982. Sanders was formerly a high-level executive with Nicolet, and is now employed by SFS.

4. Kathryn Kienert ("Kienert," collectively with SFS and Sanders, the "Defendants") is an adult resident of Wisconsin, who resides at E3967 Bow & Arrow Drive, Wautoma, WI 54981. Kienert was formerly a senior manager for Nicolet, and is now employed by SFS.

## JURISDICTION AND VENUE

5. The Court has federal question jurisdiction over Count VIII of this Complaint pursuant to 18 U.S.C. § 1836(b), and may exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. Further, this Court has diversity jurisdiction over Counts I-VII and IX pursuant to 28 U.S.C. § 1332(a)(1). Complete diversity exists between the parties, and the amount in controversy involves, exclusive of interest and costs, sums in excess of $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

# FACTS

## I.   Nicolet's Business.

7.   Nicolet provides temporary staffing services to companies and individuals, in both corporate and supportive home-care capacities.

8.   In the corporate context, when a company has a need for temporary employees, Nicolet contracts with the company to secure employees for the temporary work needed. For example, a company like Ocean Spray needs temporary workers during cranberry harvest season. Nicolet contracts with Ocean Spray and arranges to provide temporary workers to meet Ocean Spray's need for temporary employees.

9.   In the supportive home-care context, when an individual has a need for temporary home-care help, Nicolet contracts with that individual to secure employees for the temporary home-care needed. For example, an elderly person living alone might need temporary home-care after a surgery. Nicolet contracts with such individuals, and arranges to provide temporary home-care help to meet the individuals' needs.

10.   There is no publicly-available list of individuals with temporary home-care needs. Nicolet has spent significant time, money and other resources to develop relationships, sources of information and methods to locate and service individuals with home-care needs soon after the needs arise, and Nicolet maintains a proprietary database of such customers.

## II.   Sanders' Employment with Nicolet.

11.   Nicolet is a relatively small company, with 27 internal employees in Wisconsin and Michigan. Until recently, Sanders was one of the most senior managers for Nicolet, with broad responsibilities across nearly all of Nicolet's business. Indeed, for many years, Sanders was the co-manager (with another Nicolet employee) of all the Nicolet branch offices in Wisconsin and

Michigan, during which time Sanders and the other employee were the highest-level Nicolet managers.

12. For many years, Sanders was directly in charge of the Wisconsin Rapids, New London, and Medford, Wisconsin, and Menominee, Michigan, Nicolet branch offices. Sanders also proposed and arranged for the opening of an additional Nicolet branch in Eau Claire, Wisconsin (which ultimately closed).

13. In addition, like many employees in small companies, Sanders wore numerous hats for Nicolet. Beyond his specific duties for Nicolet branches, Sanders was also involved in nearly every aspect of Nicolet's business, on a company-wide basis. For many years, Sanders was responsible for, among other things:

- Soliciting existing and potential customers to utilize Nicolet's services, negotiating contracts with customers (including pricing and terms), servicing accounts, meeting with and engaging in customer relations efforts with Nicolet customers and potential customers across the entire state of Wisconsin and the upper peninsula of Michigan;
- Recruiting some of the internal and most of the temporary staffing Nicolet employees, including determining needs, posting job openings, conducting interviews, conducting background checks and drug-testing all Nicolet employees;
- Conducting all significant advertising and marketing functions for Nicolet, including radio, television, newspaper, community events, and running and updating Nicolet's website;
- Creating, discussing and revising Nicolet strategies, practices and company policies and attending all senior management meetings; and
- Participating substantively in every stage of Nicolet's customer relationships across the state of Wisconsin and the upper peninsula of Michigan, from initiating the relationships to executing the documents governing the relationships, fulfilling orders, conducting safety visits at all places at which Nicolet offered staffing services, billing and invoicing customers to collecting on past-due accounts and managing collections and accounts receivable balances at every Nicolet branch.

These duties required Sanders to be in regular contact with and frequently visit all Nicolet branch offices, and to have direct and regular contact with all Nicolet employees and customers.

14. In addition to his many and wide-ranging responsibilities for Nicolet, Sanders was made privy as a necessary part of his job functions to Nicolet's Confidential Information and Trade Secrets, including but not limited to information concerning: pricing; customers; costs; finances; marketing; operations; methodologies and protocols; research; performance data; employees (internal and temporary staffing); software and strategic and business planning.

15. Further, Sanders had access to the email accounts for all Nicolet employees, giving him the ability to read the emails sent or received by these employees. On information and belief, Sanders used this access to spy on Nicolet's employees. When Nicolet's IT Department discovered that Sanders had, while out of the office, accessed other employee's email accounts, it required all Nicolet employees to change their passwords. Sanders vehemently complained about this change, and a few days after it had been implemented, he resigned his position with Nicolet.

### III. Sanders' Non-Solicitation and Non-Disclosure Agreement with Nicolet.

16. Because of Sanders' deep involvement in virtually every aspect of Nicolet's business, his exposure to and understanding of Nicolet's Confidential Information and Trade Secrets, the regular and ongoing contact Sanders had with Nicolet's customers and the close personal relationships he was expected to and did develop with Nicolet's customers, Nicolet requested, as a condition of Sanders' employment, that Sanders agree to certain non-solicitation and non-disclosure provisions. Accordingly, on December 27, 2012, Nicolet and Sanders entered into a Non-Competition, Non-Disclosure and Non-Solicitation contract ("Sanders Contract").

17. Pursuant to the terms of the Sanders Contract, Sanders agreed, for a period of one year following the termination of his employment with Nicolet,[1] not to solicit Nicolet customers

---

[1] Technically, the period of the non-solicitation for customers is the longer of: (1) Sanders' term of employment; (2) one year after termination; and (3) one year after the termination of any contract or agreement with any Nicolet customer. As Sanders has resigned his position with Nicolet, and Nicolet terminates and renews customer contracts on a daily basis, for practical purposes the longest period is the one-year period following termination of

5

to terminate their relationship with Nicolet, not to discourage them from doing business with Nicolet, and not (on behalf of another entity) to offer to provide products or services similar to those offered by Nicolet to Nicolet customers.

18. Sanders also agreed in the Sanders Contract, for a period of one year following the termination of his employment with Nicolet, not to hire or solicit to hire Nicolet employees to terminate their relationship with Nicolet and accept employment outside Nicolet.

19. In addition, Sanders agreed in the Sanders Contract, for a period of one year following termination of his employment with Nicolet, not to take, retain or use Nicolet's Confidential Information.

20. Finally, Sanders agreed in the Sanders Contract to pay all of Nicolet's costs of enforcement of the Sanders Contract, including attorneys' fees and expenses.

### IV. Sanders Abruptly Resigns Position with Nicolet, and Joins SFS.

21. In August 2017, Sanders informed Nicolet that he was resigning his position. Nicolet asked Sanders why he was resigning, and Sanders replied that he was going to take some time off and spend time with his family. Sanders told Nicolet that he was not sure what he was going to do next. Nicolet reminded Sanders it expected that Sanders would comply with the Non-Solicitation and Non-Disclosure obligations of his contract with Nicolet, but otherwise wished Sanders all the best in future endeavors.

22. However, instead of taking some time off and spending time with his family, Sanders upon his resignation immediately began working for SFS.

23. Shortly before his departure, Sanders deleted all of the emails sent by or received from his email account. Nicolet uses Microsoft Outlook, and emails deleted by a user are sent to a

---

employment. For simplicity, this Complaint will refer to that period for non-solicitation of customers, for both Sanders and Kienert.

Deleted Items folder. After deleting all his emails, Sanders accessed the Deleted Items folder, and deleted his emails a second time, permanently deleting them. Nicolet discovered this spoliation after Sanders had left.

24. In addition, Sanders used a personal laptop to perform his duties for Nicolet, which he took with him when he left. Nicolet does not know whether Sanders copied his emails to this personal laptop, or exactly what Nicolet documents Sanders may have copied to this laptop before his abrupt departure. However, on information and belief, Sanders took certain documents belonging to Nicolet with him when he left.

25. Further, the New London branch at which Sanders primarily worked was left in disarray upon Sanders departure. When Nicolet first visited that office after Sanders' departure, all signed contracts with Nicolet customers from that branch were missing, and the files appeared to have been rifled through. Nicolet has demanded that Sanders return all Nicolet documents and materials he took with him when he left Nicolet, but Sanders has not returned any such documents or materials.

26. Moreover, since leaving Nicolet and beginning employment with SFS, Sanders has violated the customer Non-Solicitation clause of the Sanders Contract, by soliciting numerous Nicolet customers to end their relationship with Nicolet and accept staffing services from SFS. As of the date of this Complaint, Nicolet is aware that Sanders has solicited at least the following major Nicolet customers to cease or divert temporary staffing business away from Nicolet and to SFS: Ocean Spray, Steel King, and Tom Kutchenriter (home-care client).

27. In the case of Ocean Spray and Steel King, Nicolet became aware of Sanders' solicitation because Sanders publicly posted job openings on behalf of SFS to recruit employees for temporary staffing positions with these companies.

7

Case 1:18-cv-00392-WCG   Filed 03/13/18   Page 7 of 20   Document 1

28.     In the case of the supportive home-care client, Sanders contacted Mr. Kutchenriter and told him that Nicolet had breached its contract with Mr. Kutchenriter, and that Mr. Kutchenriter was not obligated to pay the significant outstanding balance due to Nicolet under his contract with Nicolet. Sanders then solicited Mr. Kutchenriter to accept home-services through SFS, using, on information and belief, the same home-care staff that Nicolet had located, vetted, hired and paid to perform this work. On information and belief, SFS has traditionally provided temporary staffing services to companies, but until it hired Sanders, had not provided home-care staffing services. SFS is now servicing Mr. Kutchenriter through Sanders.

29.     These are the known Nicolet customers Sanders has solicited. Based on the precipitous decline in Nicolet's business since Sanders' departure, Nicolet has reason to believe that Sanders has solicited many, many more Nicolet customers to leave Nicolet and join SFS. Indeed, at the New London branch alone, Nicolet has suffered more than $150,000 in lost profits in the five months since Sanders' departure, suggesting that a substantial number of customers have been lost or diverted.

30.     Since beginning employment with SFS, Sanders has violated the Non-Disclosure clause of the Sanders Contract, by using or disclosing Nicolet's Confidential Information and Trade Secrets to solicit Nicolet customers to leave Nicolet and accept staffing services from SFS. At minimum, Sanders has used his knowledge of Nicolet's home-care customers to solicit Mr. Kutchenriter to cease accepting supportive home-care services from Nicolet and to accept such services from SFS. In addition, Sanders has, on information and belief, used the following Nicolet Confidential Information and Trade Secrets to solicit clients to leave Nicolet and join SFS:

- Nicolet's proprietary list of home-care clients;
- Information concerning Nicolet's temporary employees, including but not limited to their identity, contracts with Nicolet, compensation, and work history;

- Information concerning Nicolet's customers, including but not limited to customer contacts, preferences, relationships, history and needs; and
- Information concerning Nicolet's operations, including its contracts with customers, internal financial information, pricing, costs, margins, and relationships with customers; and his knowledge of Nicolet's temporary employees.

31. Since beginning employment with SFS, Sanders has, on information and belief, violated the employee Non-Solicitation clause of the Sanders Contract, by:

- Soliciting Kienert to leave Nicolet and accept employment with SFS, as further discussed below; and
- Soliciting another Nicolet employee in the New London branch to leave Nicolet and join SFS.

Other than Sanders, there only two Nicolet employees who worked at the New London branch. In violation of the Sanders Contract, Sanders has, on information and belief, solicited both employees to leave Nicolet and join SFS, taking the entire staff of that office with him to SFS.

### V. Kienert's Employment with Nicolet.

32. Kienert was also a high-ranking manager for Nicolet. She reported directly to and worked very closely with Sanders (who hired her).

33. Kienert had responsibilities similar to Sanders with respect to soliciting customers, servicing accounts, and managing the New London Nicolet branch. She effectively served as Sanders' right-hand manager, had regular and intimate contact with Nicolet customers, was privy to all the Nicolet Confidential and Trade Secret Information discussed above, and worked closely with Sanders in all aspects of his duties for Nicolet.

### VI. Kienert's Non-Solicitation and Non-Disclosure Agreement with Nicolet.

34. Because of Kienert's high-level role for Nicolet, her exposure to and understanding of Nicolet's Confidential Information and Trade Secrets, and her regular and ongoing contact with

Nicolet's customers and close personal relationships she was expected to and did develop with these customers, Nicolet requested, as a condition of Kienert's employment, that she agree to certain non-solicitation and non-disclosure provisions. Accordingly, in November 2014, Nicolet and Kienert entered into a Non-Competition, Non-Disclosure and Non-Solicitation contract ("Kienert Contract").

35. The Kienert Contract has Non-Solicitation and Non-Disclosure provisions similar to the Sanders Contract. Kienert agreed:

- For a period of one year following the termination of her employment with Nicolet, not to solicit Nicolet customers to terminate their relationship with Nicolet, not to discourage them from doing business with Nicolet, and not (on behalf of another entity) to offer to provide products or services similar to those offered by Nicolet to Nicolet customers; and

- For a period of one year following termination of her employment with Nicolet, not to take, retain or use Nicolet's Confidential Information.

36. Like Sanders, Kienert agreed in the Kienert Contract to pay all of Nicolet's costs of enforcement of the Kienert Contract, including attorneys' fees and expenses.

## VII. Kienert Abruptly Resigns Her Position with Nicolet.

37. After Sanders left Nicolet to join SFS, Nicolet interviewed Kienert, and asked her, on account of her close relationship with Sanders, if she intended to leave Nicolet and join SFS. Kienert assured Nicolet that she was not going anywhere. Based on these representations, Nicolet promoted Kienert to Branch Manager, and substantially increased her salary.

38. However, shortly after Nicolet promoted Kienert, Kienert abruptly informed Nicolet that she was resigning her position, effective immediately. Nicolet asked Kienert why she was resigning, and Kienert replied that she needed to spend more time with her children and grandchildren, that one of her grandchildren was very ill, and that Kienert needed to stay at home to provide care for the sick grandchild, whose parents could not take off from work. Kienert

informed Nicolet that she had no plans to work anywhere else, that she was going to be a stay-at-home Grandma, and Kienert specifically denied that she was leaving Nicolet to join Sanders with SFS.

39. However, upon her resignation, Kienert immediately began working for SFS.

40. Since beginning employment with SFS, Kienert has violated the customer Non-Solicitation clause of the Kienert Contract, by soliciting Nicolet customers to end or limit their relationship with Nicolet and accept staffing services from SFS, including but not limited to the customers indicated above.

41. Since beginning employment with SFS, Kienert has, on information and belief, violated the Non-Disclosure clause of the Kienert Contract, by using or disclosing Nicolet's Confidential Information and Trade Secret Information, including but limited to the Information described above.

### VIII. Nicolet Contacted Defendants, Who Refused Alternative Dispute Resolution.

42. The Sanders and Kienert Contracts contain alternative dispute resolution provisions providing for mediation and then arbitration in the event of a dispute. Accordingly, prior to filing this lawsuit, Nicolet contacted all Defendants, provided them with courtesy copies of the Sanders and Kienert Contracts, and requested that Defendants participate in a mediation to resolve this dispute.

43. Defendants refused to participate in a mediation or any form of alternative dispute resolution.

### COUNT I
### BREACH OF CONTRACT (AGAINST SANDERS)

44. Nicolet realleges and incorporates by reference paragraphs 1 through 43 as if fully stated herein.

45. Nicolet and Sanders entered into the Sanders Contract.

46. Sanders has breached the Sanders Contract, including but not limited to by virtue of the conduct discussed above.

47. As a result of Sanders' breaches of the Sanders Contract, Nicolet has suffered damages, in an amount to be determined at trial.

48. Pursuant to the Sanders Contract, Nicolet is also entitled to recovery of its attorneys' fees in pursuing Sanders' breach of the Sanders Contract.

49. Sanders has refused to participate in mediation or other alternative dispute resolution, and Nicolet has complied with all conditions precedent to its right to recovery under the Sanders Contract.

## COUNT II
## BREACH OF CONTRACT (AGAINST KIENERT)

50. Nicolet realleges and incorporates by reference paragraphs 1 through 49 as if fully stated herein.

51. Nicolet and Kienert entered into the Kienert Contract.

52. Kienert has breached the Kienert Contract, including but not limited to by virtue of the conduct discussed above.

53. As a result of Kienert's breaches of the Kienert Contract, Nicolet has suffered damages, in an amount to be determined at trial.

54. Pursuant to the Kienert Contract, Nicolet is also entitled to recovery of its attorneys' fees in pursuing Kienert's breach of the Kienert Contract.

55. Kienert has refused to participate in mediation or other alternative dispute resolution, and Nicolet has complied with all conditions precedent to its right to recovery under the Kienert Contract.

## COUNT III
### TORTIOUS INTERFERENCE (AGAINST SANDERS AND KIENERT)

56. Nicolet repeats and realleges the allegations in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. Nicolet has contractual, prospective contractual, and actual and prospective business relationships with customers and potential customers.

58. Sanders and Kienert were and are aware of these relationships.

59. Sanders' and Kienert's conduct, including but not limited to the conduct described above, wrongfully interfered with Nicolet's relationships with customers and potential customers.

60. Sanders and Kienert acted intentionally in interfering with Nicolet's relationships.

61. Sanders' and Kienert's interference was a substantial factor in causing harm to Nicolet, in an amount to be determined at trial.

62. Sanders and Kienert engaged in a malicious pattern of behavior, and Nicolet is entitled to punitive damages.

## COUNT IV
### TORTIOUS INTERFERENCE (AGAINST SERVICE FIRST)

63. Nicolet repeats and realleges the allegations in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. Nicolet has contractual relationships with Sanders and Kienert by virtue of the Sanders Contract and the Kienert Contract.

65. SFS was and is aware of Nicolet's contractual relationships with Sanders and Kienert.

66. Sanders' solicitation of Nicolet customers, solicitation of Kienert and another Nicolet employee, and his improper disclosure and use of Nicolet's Confidential and Trade Secret

Information during the course of his duties for SFS, constitute breaches of his Sanders Contract with Nicolet.

67. Kienert's solicitation of Nicolet customers, and her improper disclosure and use of Nicolet's Confidential and Trade Secret Information during the course of her duties for SFS, constitute breaches of her Kienert Contract with Nicolet.

68. SFS wrongfully interfered with Nicolet's contractual relationships with Sanders and Kienert by, among other things, employing Sanders and Kienert in a role in which both individuals intended to and did violate their contractual obligations to Nicolet.

69. SFS intended to interfere with Nicolet's contractual relationships with Sanders and Kienert. In addition, SFS acted with reckless disregard of whether such interference would result from its conduct. SFS knew or should have known that such interference was substantially certain to occur as a result of its conduct.

70. After Nicolet expressly and formally informed SFS that Sanders and Kienert were subject to contracts with Nicolet, provided copies of these contracts to SFS, and informed SFS that Sanders and Kienert had breached these contracts in connection with their employment with SFS, SFS has continued to employ Sanders and Kienert in capacities that violate these contracts.

71. SFS's interference was a substantial factor in causing harm to Nicolet, in an amount to be determined at trial.

72. SFS engaged in a malicious pattern of behavior, and Nicolet is entitled to punitive damages.

## COUNT V
## BREACH OF FIDUCIARY DUTY (AGAINST SANDERS AND KIENERT)

73. Nicolet repeats and realleges the allegations in paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74. Sanders and Kienert had fiduciary duties to Nicolet.

75. Sanders and Kienert breached their fiduciary duties to Nicolet, including but not limited to by destroying Nicolet property, by using and disclosing Nicolet's Confidential Information and Trade Secrets and sharing them with SFS, and by soliciting Nicolet customers to leave Nicolet and join SFS, while, on information and belief, Sanders and Kienert were still employed by Nicolet.

76. As a result of Sanders' and Kienert's breaches of fiduciary duty, Nicolet has been damaged, in an amount to be determined at trial.

77. Sanders and Kienert engaged in a malicious pattern of behavior, and Nicolet is entitled to punitive damages.

## COUNT VI
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
## (AGAINST SERVICE FIRST)

78. Nicolet repeats and realleges the allegations in paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79. SFS knew that Sanders and Kienert owed fiduciary duties to Nicolet.

80. SFS aided and abetted Sanders' and Kienert's breaches of fiduciary duties to Nicolet, including but not limited to by: using Sanders and Kienert to solicit Nicolet customers to stop or limit their receipt of staffing services from Nicolet, and to accept services from SFS; and by allowing Sanders and Kienert to use and disclose Nicolet's Confidential Information and Trade Secrets in furtherance of these efforts.

81. As a result of SFS's conduct, Nicolet has been damaged, in an amount to be determined at trial.

82. SFS engaged in a malicious pattern of behavior, and Nicolet is entitled to punitive damages.

## COUNT VII
## MISAPPROPRIATION OF CONFIDENTIAL INFORMATION
## (AGAINST ALL DEFENDANTS)

83. Nicolet repeats and realleges the allegations in paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84. In conducting its business, Nicolet utilizes proprietary and confidential information and methods, which Nicolet has expended time, labor and money to create.

85. Under the terms of the Sanders and Kienert Contracts, Sanders and Kienert represented that they would not use Nicolet's Confidential Information, or disclose it to third parties.

86. In addition, Sanders' and Kienert's fiduciary duties to Nicolet placed an independent obligation on Sanders and Kienert not to disclose or use Nicolet's Confidential Information except as authorized by Nicolet.

87. Relying on Sanders' and Kienert's representations and fiduciary duties, Nicolet entrusted Sanders and Kienert with certain Confidential Information, including but not limited to the Confidential Information described above.

88. Despite acquiring Nicolet's Confidential Information under circumstances giving rise to a duty to maintain its secrecy and limit its use, Sanders and Kienert improperly used and disclosed Nicolet's Confidential Information. Such wrongful use and disclosure included use for the benefit of and disclosure to third parties, including SFS.

89. Despite knowing that Sanders and Kienert are under a duty not to use or disclose Nicolet's Confidential Information, SFS knowingly benefitted from Sanders' and Kienert's

disclosure and use of Nicolet's Confidential Information, including in SFS's solicitation of Nicolet customers to stop or limit acceptance of staffing services from Nicolet, and to begin accepting staffing services from SFS.

90. Defendants have misappropriated Nicolet's Confidential Information. As a direct and proximate result, Defendants have damaged Nicolet in an amount to be determined at trial.

91. Defendants engaged in a malicious pattern of behavior, and Nicolet is entitled to punitive damages.

## COUNT VIII
## MISAPPROPRIATION OF TRADE SECRETS
## UNDER 18 U.S.C. § 1836
## (AGAINST ALL DEFENDANTS)

92. Nicolet repeats and realleges the allegations in paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93. In conducting its business, Nicolet has developed and utilizes certain proprietary and confidential information and methods that constitute "Trade Secrets" within the definition of 18 U.S.C. § 1839(3), including Trade Secrets related to products and services used in, or intended for use in, interstate or foreign commerce.

94. Sanders and Kienert misappropriated Nicolet's Trade Secrets, including but not limited to the information described above, by improperly disclosing and using Nicolet's Trade Secrets without the express or implied consent of Nicolet, at a time when Sanders and Kienert knew or had reason to know that they acquired their knowledge of Nicolet's Trade Secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use.

95. SFS misappropriated Nicolet's Trade Secrets, including but not limited to the information described above, by wrongfully acquiring Nicolet's Trade Secrets through Sanders' and Kienert's use and disclosure of Nicolet's Trade Secrets at a time when SFS knew or had reason

to know that Sanders and Kienert were under a duty to maintain the secrecy of such Trade Secrets. SFS both knew that Sanders' and Kienert's use and disclosure of Nicolet's Trade Secrets breached Sanders' and Kienert's duty to maintain the secrecy or limit Sanders' and Kienert's use of such Trade Secrets, and SFS induced Sanders and Kienert to breach their duties.

96. By virtue of Defendants' misappropriation of Nicolet's Trade Secrets, Nicolet is entitled to monetary damages, pursuant to 18 U.S.C. § 1836(b)(3)(B), in an amount to be determined at trial.

97. Nicolet is further entitled, pursuant to 18 U.S.C. § 1836(b)(3)(A), to a permanent injunction prohibiting Defendants from misappropriating Nicolet's Trade Secrets.

98. Defendants' misappropriation was willful and malicious, and Nicolet is further entitled, pursuant to 18 U.S.C. § 1836(b)(3)(C), to exemplary damages in an amount not more than two times the amount of monetary damages.

99. Nicolet is further entitled, pursuant to 18 U.S.C. § 1836(b)(3)(D), to its reasonable attorneys' fees in pursuing this claim.

## COUNT IX
## MISAPPROPRIATION OF TRADE SECRETS
## UNDER WIS. STAT. § 134.90
## (AGAINST ALL DEFENDANTS)

100. Nicolet repeats and realleges the allegations in paragraphs 1 through 91 of this Complaint as if fully set forth herein, and pleads this cause of action in the alternative to its federal claim under 18 U.S.C. § 1836.

101. In conducting its business, Nicolet has developed and utilizes certain proprietary and confidential information and methods that constitute "Trade Secrets" within the definition of Wis. Stat. § 134.90(1)(c).

102. Sanders and Kienert misappropriated Nicolet's Trade Secrets, including but not limited to the information described above, by improperly disclosing and using Nicolet's Trade Secrets without the express or implied consent of Nicolet, at a time when Sanders and Kienert knew or had reason to know that they acquired their knowledge of Nicolet's Trade Secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use.

103. SFS misappropriated Nicolet's Trade Secrets, including but not limited to the information described above, by wrongfully acquiring Nicolet's Trade Secrets through Sanders' and Kienert's use and disclosure of Nicolet's Trade Secrets at a time when SFS knew or had reason to know that Sanders and Kienert were under a duty to maintain the secrecy of such Trade Secrets. SFS both knew that Sanders' and Kienert's use and disclosure of Nicolet's Trade Secrets breached Sanders' and Kienert's duty to maintain the secrecy or limit Sanders' and Kienert's use of such Trade Secrets, and SFS induced Sanders and Kienert to breach their duties.

104. By virtue of Defendants' misappropriation of Nicolet's Trade Secrets, Nicolet is entitled to monetary damages, pursuant to Wis. Stat. § 134.90(4)(a), in an amount to be determined at trial.

105. Nicolet is further entitled, pursuant to Wis. Stat. § 134.90(3), to a permanent injunction prohibiting Defendants from misappropriating Nicolet's Trade Secrets.

106. Defendants' misappropriation was willful and malicious, and Nicolet is further entitled, pursuant to Wis. Stat. § 134.90(4)(b), to recover punitive damages in an amount not more than two times the amount of monetary damages.

107. Nicolet is further entitled, pursuant to Wis. Stat. § 134.90(4)(c), to its reasonable attorneys' fees in pursuing this claim.

**WHEREFORE**, Nicolet demands judgment:

A. For compensatory damages in an amount to be determined at trial;

B. For consequential damages in an amount to be determined at trial;

C. For punitive and exemplary damages in an amount to be determined at trial;

D. For a permanent injunction barring Sanders', Kienert's and SFS's disclosure and use of Nicolet's Trade Secrets;

E. For Nicolet's attorneys' fees, expenses, costs and disbursements in this action; and

F. For such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Nicolet demands a trial by jury on all counts so triable.

Dated: March 13, 2018.

>  */s/ Ryan M. Billings*
> Ryan M. Billings
> WI State Bar No. 1084543
> KOHNER, MANN & KAILAS, S.C.
> 4650 N. Port Washington Road
> Milwaukee, WI 53212
> Phone: 414-962-5110
> Email: rbillings@kmksc.com
>
> *Attorneys for Plaintiff Staffworks Group-Wisconsin Inc., d/b/a Nicolet Staffing*