UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STAFFWORKS GROUP-WISCONSIN INC.,

        Plaintiff,

      v.                              Case No. 18-C-392

SERVICE FIRST STAFFING INC., et al.,

        Defendants.

---

## DECISION AND ORDER DENYING MOTION FOR SANCTIONS

---

Defendants David Sanders and Kathryn Kienert left their jobs at the New London branch of Plaintiff Staffworks Group-Wisconsin, Inc., d/b/a Nicolet Staffing (hereinafter, Nicolet), and went to work for Nicolet's competitor, Defendant Service First Staffing, Inc., (hereinafter, SFS). Almost immediately, SFS began enlisting Nicolet's customers and temporary workers. Nicolet filed this lawsuit claiming that Sanders and Kienert had breached the "Non-Competition, Non-Disclosure and Non-Solicitation Agreements" they had signed as a condition of their employment with Nicolet. The complaint also asserts claims against Sanders and Kienert for misappropriation of confidential information and trade secrets in violation of state and federal law, breach of fiduciary duties, and tortious interference with contractual relations. SFS is alleged to have also tortiously interfered in contractual relations, misappropriated confidential information and trade secrets, and aided and abetted Sanders and Kienert in breaching their fiduciary duties to Nicolet. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1332. The case is before the court on Nicolet's motion for sanctions.

Nicolet contends that Defendants failed to comply with this court's discovery order (Dkt. No. 24) and failed to preserve evidence. Nicolet accuses Sanders of spoliation of evidence. The discovery order (Discovery Order) was entered after a hearing on October 30, 2018, where the court heard arguments concerning the parties' various discovery disputes. The Discovery Order directed supplemental production with respect to certain items and identified six additional categories to which Nicolet was entitled to discovery. Dkt. No. 24 at 2. Much of the discovery ordered by the court concerned other SFS entities with only an attenuated relationship to the issues in this case. The court nonetheless directed Defendants to provide the discovery sought out of an abundance of caution.

The Discovery Order also required Defendants to forensically image Sanders' personal laptop computer and stated that Nicolet would be responsible for the reasonable costs associated with imaging the hard drive (provided, however, Nicolet could request that Defendants bear the costs if evidence showed Sanders deleted electronically stored information or other materials after the duty of preservation arose). *Id.* at 3.

Still, even following the Discovery Order, Nicolet says it has had to contend with Defendants' "failure to perform basic discovery functions." Dkt. No. 38 at 2. Nicolet claims that many documents that should have been produced per the Discovery Order "remain outstanding, and either Defendants refused to provide them, or they have been lost due to Defendants' admitted spoliation of evidence." *Id.* Nicolet argues it is entitled to sanctions in light of the unnecessary costs these discovery complications have caused and the accompanying prejudice. Nicolet also asks the court to provide an adverse inference instruction to the jury, to deem certain facts as admitted, and to prohibit Defendants from making arguments and offering evidence related to the discovery Defendants failed to provide.

2

In support of its motion for sanctions, Nicolet recounts the frustrations that it claims led to its motion to compel discovery. In doing so, it directs the court to its brief filed in support of its motion to compel discovery in September 2018. Dkt. No. 17. Nicolet argues that there were three issues raised by the motion to compel: (1) missing documents; (2) objected-to-discovery; and (3) Sanders' admitted deletion of emails prior to departing Nicolet. Some of these documents were "begrudgingly produced" near the close of discovery (months after the court's Discovery Order) and after Defendants were deposed; others are outstanding, according to Nicolet. Dkt. No. 38 at 11. Nicolet also reminds the court that it advised Defendants that it would consider a request for costs if further issues arise. What is missing, however, is any persuasive showing that the documents produced late were deliberately withheld or were in some way key to the case, and that Nicolet is somehow prejudiced by the late production.

Defendants argue that Nicolet seeks sanctions to essentially distract the court from the "baseless claims" brought by its lawsuit. They assert that Nicolet's motion for sanction mixes unrelated discovery issues that were raised prior to the Discovery Order, were addressed by the Discovery Order, and have emerged after the Discovery Order. Dkt. No. 50 at 2. Defendants contend that they have provided responsive discovery material and have fully complied with the Discovery Order. In addition, Defendants point out that while they have supplemented their discovery productions seven times, Nicolet has supplemented its discovery production sixteen times. Dkt. No. 50 at 2–3. Defendants also view Nicolet's many disagreements about discovery that postdate the Discovery Order as issues separate from any contemplated by the Discovery Order. As such, Defendants argue that Nicolet should have (but did not) meet and confer to attempt to reconcile any discovery issues before filing its motion.

3

Federal district courts have both rule-based and inherent power to impose sanctions for bad-faith conduct. *Chambers v. NASCO*, *Inc*., 501 U.S. 32, 46 (1991). The sanctions imposed should be "proportionate to the circumstances surrounding a party's failure to comply with discovery rules" or court orders regarding discovery. *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (citing *Melendez v. Ill. Bell Tel. Co*., 79 F.3d 661, 672 (7th Cir. 1996)); *see also Dotson v. Bravo*, 321 F.3d 663, 666–67 (7th Cir. 2003). As a sanction for failing to comply with a court order regarding discovery, the court may order reasonable expenses and attorneys' fees, but may also direct "that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" or prohibit "the disobedient party from supporting or opposing designated claims or defenses." Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii) and (c)(1). "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 776 (7th Cir. 2016). In determining whether sanctions for discovery violations are appropriate, the court also weighs

> (1) the prejudice or surprise to the party against whom the evidence is being offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Nicolet has not shown that Defendants' conduct in discovery is sanctionable. Its motion does not set forth how Defendants did—or did not—comply with each of the specific items identified in the court's Discovery Order. Instead, it conflates a host of issues first raised in briefing before the court entered the Discovery Order with pieces of evidence it claims are missing and known to Nicolet because they were revealed through witness testimony or cross-referenced

4

in other documents. Even in its reply in support of its motion for sanctions, Nicolet does not respond to Defendants' description of how it has complied with the Discovery Order. Instead, Nicolet reminds the court of the "fundamental questions presented in this case" and pursues additional arguments. Dkt. No. 72 at 15. However, this does not address Defendants' assertion that it provided all relevant documents required by the Discovery Order, even if some were produced in supplemental productions or after the parties met and conferred.

Nicolet also fails to justify why it has not searched the hard drive that Defendants forensically imaged or why it did not approach Defendants or the court before requesting this as a sanction. The Discovery Order instructed Defendants to "promptly forensically image the hard drive of Sanders' personal laptop computer." Dkt. No. 24 at 3. The order did not discuss forensic searches and Nicolet does not contend that Defendants failed to image the hard drive. Defendants assert they had a third party forensically image the hard drive on November 15, 2018. Dkt. No. 50 at 4. But now, in its motion for sanctions, Nicolet requests—apparently for the first time—that Defendants should bear the cost of searching this hard drive. Dkt. No. 38 at 29.

This relates to the most serious of the claims Nicolet makes—the claim that Sanders spoliated evidence. Nicolet alleges that Sanders deleted his Nicolet emails from his computer prior to his resignation from Nicolet. Sanders admits that he deleted emails but claims they were not central to Nicolet's business and that Nicolet had copies at other locations. He denied that it was with intent to hinder Nicolet in its business. Dkt. No. 18-4, at 2. Sanders maintains that he periodically sent Nicolet emails to his personal computer in order to accommodate travel and track his commissions. Dkt. No. 42, ¶ 9. He denies that he ever provided them to SFS or used them to compete with Nicolet. *Id.* Notwithstanding Defendants' contention that Nicolet had furnished no reason beyond its own suspicions that there may be other documents on it, the court ordered

5

Defendants to allow Nicolet, if it chose, to obtain a mirror image of Sanders' personal computer so that it could conduct its own search. In the event Nicolet later showed that Sanders had deleted relevant and discoverable information after his duty to preserve evidence arose, the court stated that Nicolet could then seek actual costs from Defendants. Left unsaid was that Nicolet could also then seek other appropriate sanctions. Dkt. No. 24 at 3. Nicolet has offered no such evidence.

Nicolet also fails to explain how the information it seeks through the deleted emails is permanently lost. It has not articulated exactly when Sanders' duty to preserve arose based on any legal basis besides citing Fed. R. Civ. P. 37(e), which provides that

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Nicolet did not file a separate motion under Rule 37(e). Instead, it included this distinct issue as a basis for its motion for sanctions. However, Rule 37(e) provides that for the court to remedy any spoliation thereunder, it must be established that the deleted information "cannot be restored or replaced through additional discovery." In addition to not conducting a search of Sanders' hard drive for any residual or related evidence, Nicolet did not show that the missing emails are even relevant or that they cannot be located through additional discovery.

To a large extent, Nicolet is seeking discovery outside the Discovery Order and a reconsideration of issues contemplated by the Discovery Order. Because Nicolet has not shown

6

how Defendants have failed to comply with the Discovery Order, its motion (Dkt. No. 36) for sanctions will be denied.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of June, 2020.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge